**CITY OF AMARILLO, Texas, Appellant,**

**v.**

**Bernard REID et al., Appellees.**

**No. 8456.**

Court of Civil Appeals of Texas, Amarillo.

May 28, 1974.

Rehearing Denied June 24, 1974.

**626**

J. Bruce Aycock, Gibson, Ochsner, Adkins, Harlan & Hankins, Mac W. Hancock, III, Amarillo, for appellant.

Arthur J. Lamb, V. G. Kolius, Amarillo, for appellees.

REYNOLDS, Justice.

Plaintiff homeowners sued to recover monetary damages from, and secured favorable jury findings authorizing recovery against, the City of Amarillo, Texas, for its negligence in paving a city street so as to divert rainwaters into plaintiffs' homes. Affirmed.

Plaintiffs are Bernard Reid, J. R. Stringfellow and Earl J. Peoples, and their respective wives. They own homes on the north side of Kelly Place, an east-west street in Sue Terrace Addition, a development situated immediately east of Irwin Road, a street extending in a north-south direction, and immediately west of Amarillo Creek, which runs in a general southwest-to-northeast direction within the city limits. Sue Terrace Addition was developed in 1963 and 1964 by Marvin K. Chamberlain, who constructed and sold houses situated therein, but there is no evidence that Chamberlain sold to plaintiffs the homes they now own.

In the summer of 1971, the city paved the portion of Irwin Road lying east of Sue Terrace Addition. On May 10, 1972, there was a rainfall in such an amount that the water overflowed Irwin Road and Kelly Place and invaded plaintiffs' homes.

Plaintiffs then filed this suit against the city, alleging that the city, while paving Irwin Road, negligently failed to provide for adequate water drainage, thereby diverting water into and proximately causing damage to plaintiffs' homes. The negligent acts alleged were the covering of the then existing ditches on either side of Irwin Road, the removal of the then existing storm sewer under Kelly Place, and the failure to provide an adequate alternative drainage for water.

After seeking and being granted permission to implead Marvin K. Chamberlain as a third-party defendant, the city interposed the defenses that it breached no duty owed to plaintiffs, that plaintiffs were contributorily negligent and voluntarily exposed themselves to, and assumed, the risks involved, and that any liability was that of Chamberlain's arising through his breach of contract and breach of express and implied warranties to plaintiffs, or through negligence in connection with his construction of the homes. The city further pleaded that it was thereby entitled to indemnity by or contribution from Chamberlain for any liability imposed on it.

The cause was submitted to a jury. Corresponding to the numbered special issues material to this appeal, the jury found that (1) the city covered the ditches paralleling Irwin Road when it paved the street, which (2) diverted flood waters onto plaintiffs' properties, and which was (3) negligence and (4) a proximate cause of plaintiffs' damages; that (5) the city removed the culvert under Kelly Place at the time of paving, which (6) diverted flood waters onto plaintiffs' properties, and which was (7) negligence and (8) a proximate cause of plaintiffs' damages; and that (9) the city failed to provide an adequate alternative route for drainage of flood waters, which was (10) negligence and (11) a proximate cause of plaintiffs' damages. The jury found against the city on its de-

fensive issues and absolved Chamberlain of all liability. The jury apportioned its determination of the total damages of $8,428.00 to the respective plaintiffs.

The first twenty-one of the city's forty-four points of error are attacks on the submission of, and the jury's findings responsive to, special issues one through eleven. The submission of these issues over the denial of the city's motion for instructed verdict is contested on the assertion that there is no evidence of probative force to warrant their submission. The jury's findings are challenged by assertions that the evidence is legally and factually insufficient to support the findings made. The evidence contained in the voluminous record is summarized preliminarily to the consideration of these points.

The terrain south and east of Sue Terrace Addition is higher than the terrain of the addition, with the natural flow of water toward Kelly Place and over the lots on which plaintiffs' homes were later built onward to Amarillo Creek. In the 1963–64 development of the addition, the streets were engineered, including the manner of paving Kelly Place, and a storm sewer was installed to meet the city's specifications for water drainage as a prerequisite to the city's acceptance of the annexation of Sue Terrace Addition to the city. To facilitate the water drainage, the city installed a cement culvert under Kelly Place at its intersection with Irwin Road, and provided ditches on both the east and west sides of Irwin Road which was unpaved in the vicinity. Thereafter and until Irwin Road was paved in 1971, except for one instance in 1965 or 1966, the rainwater, even following a substantial rain, would drain down to Irwin Road where it would be caught in the borrow ditches paralleling the road, and then the water would run down those ditches to Amarillo Creek, the water on the west side of Irwin Road and south of Kelly Place passing through the cement culvert under Kelly Place. In 1965 or 1966, a rain washed mud into and filled the ditches paralleling Ir-

win Road and before the city removed the mud, another rain caused rainwater to flow across the mud-filled ditches into the house later purchased and now owned by the Stringfellows, two of the plaintiffs.

In 1971, the city paved Irwin Road to make it more passable and in order that the people who live on the road could have better access to their homes. Although a paved street improves the drainage of an area, the city engineer in charge of the project denied that one of the reasons the road was paved was to remedy or alter any drainage problem, yet his design was developed to facilitate water drainage. In the course of the paving project, the cement culvert under Kelly Place was removed and the ditches bordering Irwin Road were eliminated.

At its intersection with Irwin Road, Kelly Place was widened eight feet, sloped toward the south and slightly curved with an arm that would tend to slightly increase the flow of water onto Kelly Place from its northward course down Irwin Street. The crown was raised approximately one-half foot and the six inch high curbs were reinstalled. The design effect was not to channel other water onto Kelly Place, but was to retain the normal water on the street, rather than permitting an overflow, as it flowed westward down Kelly Place into Amarillo Creek.

Irwin Road was paved from a point six hundred feet south of Kelly Place northward a total distance of 1540 feet to Amarillo Creek. The elevation drop from the point of beginning to Kelly Place was altered to twenty-four feet, resulting in an increase in the velocity of rainwater flowing northward on Irwin Road to Kelly Place; and from Kelly Place northward, the elevation drop was ten or eleven feet. Although crowned in the center, Irwin Road was made one-half foot lower on the west side than it is on the east side at the Kelly Place intersection Both Irwin Road and Kelly Place carried significantly more water than they did prior to the paving project.

On May 10, 1972, there was a substantial rain, but no more substantial than were four or five other rains prior to 1971 according to one witness, and not as substantial as other rains recalled by another witness. Some of the plaintiffs testified that the rainwater was channeled on Irwin Road in a northerly direction until it got to the intersection with Kelly Place and then, instead of flowing northward as it did before the paving project, it flowed through the curved intersection onto Kelly Place in a westerly direction, filling Kelly Place and overflowing onto plaintiffs' premises and into their homes.

In considering and weighing all of the evidence in the record, albeit only a condensed version thereof has been recounted above, we have been guided by the principles enunciated in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951), as the city submits we must. When so considered, the city insists that there is no evidence that the city breached any duty owed to plaintiffs by doing what it was specifically empowered to do in undertaking the paving project. We do not agree.

 While there can be no recovery for damages from the city for the mere exercise of its undisputed legal right to undertake the paving project, recovery may be had for damages proximately caused by negligence or want of care in the exercise of that legal right. Coequal with that legal right was the duty to use ordinary care not to divert surface rainwater into plaintiffs' homes. City of Wichita Falls v. Mauldin, 39 S.W.2d 859 (Tex.Com.App. 1931). Thus, there being some evidence of probative force to support the pleaded acts of negligent diversion of surface rainwater from its previous channels of flow *proximately causing plaintiffs' damages*, the court did not err in denying the city's motion for instructed verdict and in submitting the special issues. See Air Conditioning, Inc. v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422 (1952).

In making its factual determinations, the jury was confronted with conflicting evidence. On the one hand, plaintiffs' evidence was that prior to the 1971 paving project, the constructed streets were designed to and did carry surface rainwater of equal or greater intensity as that of the May 10, 1972 rainfall past, and without damage to, plaintiffs' properties; and that, subsequent to completion of the city's paving project, the changed conformation of the streets caused the surface rainwater to be diverted onto plaintiffs' premises and into their homes. On the other hand, the city elicited testimony that the natural flow of the water drainage was over plaintiffs' now owned properties, that water problems still persisted before Irwin Road was paved, that from an engineering viewpoint the paving not only did not divert water, but provided a more efficient conduit for carrying rainwater away from Kelly Place, and that the overflow of water on May 10, 1972, was occasioned by the unusual amount of rainfall and not by any negligence on the part of the city.

 We do not agree with the city's position that this is the situation where the expert evidence of engineers must control; rather, the factual determinations involved are those which the jury was competent to resolve from the whole evidence presented by both expert and lay witnesses. Consequently, it was the province of the jury to resolve the conflicts, as well as the discrepancies, in the testimony presented; and, although the jury in judging the credibility of the witnesses may believe one witness and disbelieve another, the jury was not required to depend upon the testimony of any one witness. Muro v. Houston Fire & Casualty Insurance Co., 329 S.W. 2d 326 (Tex.Civ.App.—San Antonio 1959, writ ref'd n. r. e.).

A perusal of the record in conjunction with the jury's role and the guidelines of evidential review reveals some evidence of probative force to support the jury's findings; and, considering and weighing all of the record evidence in relation to the

jury's factual determinations, these findings are not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Accordingly, the first twenty-one points of error are overruled.

■ Elaborating further on the concept of duty raised in the preceding group of points, the city contests the judgment for plaintiffs on the basic theory, expressed in points twenty-two through thirty-one and in point forty-one, that plaintiffs failed, by not requesting submission of and obtaining favorable answers to appropriate special issues, to prove the existence of any duty owed them by the city. A sufficient answer is that the law imposes upon the city the duty, in exercising its legal right to exclusive authority over its streets, to use ordinary care to avoid injuring the property of its citizens. City of Wichita Falls v. Mauldin, supra; Carter v. Lee, 502 S.W.2d 925 (Tex.Civ.App.—Beaumont 1973, writ ref'd n. r. e.). For recovery, the plaintiffs relied upon negligent breach of that duty; therefore predicate special issues relating to that duty were unnecessary to establish the duty imposed by law on the city. The points are overruled.

Point thirty-two is concerned with the proposition that it was error for the trial court to deny the city's motion for mistrial after the court allowed counsel for plaintiffs and counsel for third-party defendant six peremptory challenges each, and permitted each counsel to ask leading questions of the other counsel's witnesses. The error is made manifest, the city says, because of the close association of counsel in the practice of law and the lack of any conflicting interest in the lawsuit.

■ Entitlement to six jury strikes by each of two or more parties to the lawsuit depends on whether they have interests that are, at least in part, antagonistic on one or more fact issues. Brown & Root, Inc. v. Gragg, 444 S.W.2d 656 (Tex.Civ. App.—Houston [1st Dist.] 1969, writ ref'd n. r. e.). The trial court must determine from allegations in the pleadings whether such parties are entitled to six jury strikes each, M. L. Mayfield Petroleum Corporation v. Kelly, 450 S.W.2d 104 (Tex.Civ. App.—Tyler 1970, writ ref'd n. r. e.), and the question of whether the allowance of the six extra jury strikes was error is not to be determined by hindsight, but by an examination of the record as of the time the trial court granted the separate peremptory challenges. Roy L. Martin & Associates, Limited v. Renfro, 483 S.W.2d 845 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.).

■ In the present cause, at the time the trial court permitted each party six peremptory challenges, the pleadings by the city had cast the plaintiffs and the third-party defendant in roles antagonistic to each other. Although plaintiffs had asserted no cause of action against the third-party defendant, Chamberlain, the strategy pleaded by the city was to hold Chamberlain responsible for any liability for any damages suffered by plaintiffs, and to impose on him the payment of any recovery had against the city. In this state of the record, it cannot be said that the trial court could determine as a matter of law at the time the peremptory challenges were exercised that there was no antagonistic interest between plaintiff and third-party defendant on one or more fact issues.

■ Further, the mere assertion, without more, that the court permitted leading questions does not present reversible error. The thirty-second point is overruled.

The court granted the city's motion in limine to exclude any evidence of repairs or alterations made in the surrounding area subsequent to the occurrence in question that might affect the water drainage. During the trial, the city's counsel elicited from plaintiff Reid, in response to cross-examination inquiry, the answer that he would object at this time to the removal of the pavement on Irwin Road. Thereupon, outside the presence of the jury, plaintiffs' counsel requested the court to allow,

and the court did permit, Mr. Reid to explain in the presence of the jury that the reason for his answer was that "there have been improvements made that corrects (sic) the water flow." No further explanation was asked for or given. This testimony was admitted over objection and the denial of the city's motion for mistrial based thereon is the subject of the thirty-third point of error.

The general rule relied on by the city is that testimony of subsequent repairs, improvements or changes is not admissible as evidence to show negligence under pre-existing conditions. However, the rule is inapplicable if the testimony would be valid in regard to other issues in the case, Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99 (1953), such as a re-direct explanation of an apparent inconsistency when Reid, contending that the negligence in paving Irwin Road damaged his property, stated on cross-examination that he would now object to removing the pavement. See 1 McCormick and Ray, Texas Evidence, § 621 (2d Ed. 1956). The point is overruled.

The city claims in points thirty-four and thirty-five that the use of the term "flood waters," rather than the correct term "surface waters," in special issues 2, 6 and 12, the latter being the damage issue, was erroneous and that the evidence deos not support any finding of damages caused by "flood waters." The record is interspersed with instances of the unobjected to use of "flood waters" interchangeably with the terms "surface water," "rainfall" and "water" in reference to the water that invaded plaintiffs' homes on the occasion in question. A fair reading of the record reveals that the term "flood water" was merely descriptive of, rather than employed to legally define, the May 10, 1972 rainfall without any special significance to the jury. It is evident that the jury understood all of the terms used to simply mean and regarded the term "flood water" as used in the special issues

as meaning, the water that invaded plaintiffs' homes. Any error in the use of the term, therefore, is harmless. Rule 434, Texas Rules of Civil Procedure. These points are overruled.

Points of error thirty-six through forty-one are expressions of the city's central complaint that the trial court erred in failing to submit any instruction, and a number of the city's requested instructions concerning state statutes and city charter provisions, purporting to give the city the authority to take the action it did relative to the streets. The contention is made that the court's refusal to give such instructions created a presumption that the city had no legal right to act as it did.

The effect of that contention is that the city was entitled to an instruction that it could not be liable when it exercised control over its city streets. That, of course, is not the law which has heretofore been stated.

It is undisputed that the city had exclusive control over, and the legal right to undertake the paving of, its city streets; the issues for determination were whether the city, in exercising its legal right, did certain things negligently, thereby injuring plaintiffs' properties. See City of Wichita Falls v. Mauldin, supra; Carter v. Lee, supra.

The purpose of special instructions is to explain the charge and to enable the jury to pass upon and render a verdict upon the issues. Rule 277, T.R.C.P. Under the circumstances here, the requested instructions, or a similar one, would have been of no assistance to the jury in the task assigned to it under the charge given by the court. The points are overruled.

Points forty-two and forty-three advance the city's contention that the trial court erred in failing to submit its requested special issue no. 18, its defensive theory of limitation through the possible accrual of a cause of action to plaintiffs prior to May 10, 1970. However, the record re-

flects that, although there may have been some diversion of water prior to May 10, 1970, plaintiffs had not been damaged by such diversion prior to that time. For limitation to apply, it is axiomatic that there must be a right to sue, and for there to be a right to sue, there must be some damage. There appearing in the record no evidence of damage to plaintiffs prior to May 10, 1970, the requested special issue was properly refused. These points are overruled.

In its final point of error, the city asserts that the court erroneously refused to submit its requested special issue no. 38, its defensive theory that the third-party defendant was guilty of a breach of warranty, either express or implied. Suffice it to note, without copying for comparison, that the special issue requested embraced the same ultimate issue submitted as special issue no. 13 in the court's charge. Having submitted the ultimate issue, the case will not be reversed for failure to submit a different shade of the same issue. Rule 279, T.R.C.P. The forty-fourth point is overruled.

The judgment is affirmed.

ROBINSON, J., not sitting.