MALONE & HYDE, INC., Appellant,

v.

John HOBRECHT, et al., Appellees.

John HOBRECHT, et al., Appellants,

v.

MALONE & HYDE, INC., Appellee.

No. 04–83–00086–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 16, 1985.

Rehearing Denied Feb. 26, 1985.

Clem Lyons, Stephen Dittlinger, Southers & Lyons, D. Hull Youngblood, Jr., San Antonio, for appellant.

Richard Johnson, San Antonio, for appellees.

Before CADENA, C.J., and CANTU and REEVES, JJ.

## OPINION

CANTU, Justice.

Separate appeals are taken from a judgment entered in a wrongful death and survivor's action brought by the Estate of Roland A. Hobrecht, his wife and three adult children, against Malone & Hyde, Inc. (Malone), the owner of a Sommer's Drug Store in San Antonio, for the alleged malpractice of its employee in misfilling a prescription for syringes.

Malone joined Dr. Bernard Pomerantz as a third party defendant alleging that the acts of Dr. Pomerantz in failing to properly instruct the Hobrechts in how to administer and verify a dosage of insulin required

constituted malpractice. Malone further alleged that the Hobrechts were negligent in failing to adhere to the instructions of Dr. Pomerantz and that certain employees of Park North General Hospital were negligent in failing to properly instruct the Hobrechts in the proper administration of insulin.

The plaintiffs (Hobrechts) did not join in the action against Dr. Pomerantz or against the hospital employees.

The jury answered seventeen special issues finding Malone exclusively at fault, exonerating the Hobrechts of contributory negligence and Dr. Pomerantz of primary negligence. No special issues were submitted with regard to the negligence of the Park North General Hospital employees and their alleged negligence passed out of the case.

The jury's verdict included an award of $250,000 to Mrs. Hobrecht for pecuniary loss, $25,000 for loss of consortium before the death of her husband, Roland Hobrecht and $250,000 for loss of consortium which Mrs. Hobrecht would sustain after the death of her husband.

Also included in the jury verdict was an award of $50,000 to John Hobrecht, the adult son of the decedent as pecuniary loss, an award of $30,000 to Richard Barry Hobrecht, another adult son of the decedent, as pecuniary loss and an award of $60,000 as pecuniary loss to Pamela Goodlett, the adult daughter of the decedent.

The jury further awarded the estate $250,000 for damages incurred by decedent individually for his conscious physical pain and mental anguish as well as $20,243 as reasonable medical expenses and $2,678.01 as reasonable funeral and burial expenses.

At a hearing on the Hobrechts' motion to enter judgment on the verdict, the trial court disregarded the jury's answer awarding Mrs. Hobrecht $250,000 as damages for the loss of consortium after death and entered judgment in the amount of $667,921.49. The trial court, however, denied Malone's prayer to limit the judgment to $500,000 plus reasonable medical expenses pursuant to TEX.REV.CIV.STAT.ANN. art. 4590i and further refused to suggest a remittitur. Malone appeals from the judgment entered and the Hobrechts prosecute a separate appeal solely on the trial court's act in disregarding the jury's answer to the special issue awarding Mrs. Hobrecht $250,000 for loss of consortium after the date of the decedent's death.

The decedent, Roland Hobrecht, was a sixty-six year old advertising executive associated with the firm of Wyatt Advertising Company. At the time of his death, he had been married to his only wife, Antonia, for thirty-nine years. The Hobrechts had three children, Richard Barry, John and Pamela.

In August of 1980, the decedent was on a short vacation in Ruidoso, New Mexico, when he developed an infection inside his lip and was hospitalized in a Ruidoso hospital for a few days.

After his condition stabilized, the decedent and his wife returned to San Antonio where he was seen by Dr. Pomerantz, his treating physician for his long term bout with diabetes. On August 27, 1980, the decedent was admitted to the Park North General Hospital for aggravation of his diabetes. Although the decedent's diabetes had previously been controlled by oral medication, Dr. Pomerantz decided to start him on injectable insulin. Dr. Pomerantz filled out a prescription for NPA insulin, insulin syringes, $5/8 \times 26$ gauge needle and for other medication.

In order to save time, Dr. Pomerantz telephoned the prescription to the pharmacist on duty at the Sommer's Drug Store where the Hobrechts routinely filled prescriptions. The pharmacist on duty, however, filled the prescription with a non-insulin syringe.

These syringes were 25 gauge, $5/8$ inch syringes with a total capacity of 3cc's and do not have the "units" marked on the barrel for insulin. An insulin syringe has demarcations for "units" of insulin and usually has a maximum volume of 1cc (100 units).

Decedent's prescription directions required him to inject himself with twenty-five units of NPH insulin each day. As a result of the misfilling of the prescription, the decedent injected himself with approximately six times his prescribed dosage of insulin on two consecutive days, that is to say, he injected himself with 150 units of insulin each time. The decedent was readmitted to Park North General Hospital the day following the final injection and was subsequently transferred to Santa Rosa Medical Center where he died approximately thirty days later.

Malone brings forth eighteen points of error for review. Essentially they fall into seven categories. The first contention complains of the trial court's entry of a judgment in excess of $500,000 plus reasonable medical expenses found by the jury and court costs.

The second alleges factual as well as legal insufficiency of evidence to support the jury finding of $250,000 as damages for physical pain and mental anguish suffered by the decedent for a period of thirty days.

The third contention alleges factual and legal insufficiency of evidence to support the jury's finding of $250,000 in pecuniary loss by the decedent's wife.

The fourth contention alleges factual and legal insufficiency of evidence to support the jury's finding of damages for pecuniary loss suffered by each of decedent's adult children.

The fifth contention alleges factual and legal insufficiency of evidence to support the jury's finding of $25,000 as damages for loss of consortium suffered by decedent's wife prior to the death of decedent.

The sixth contention alleges that the trial court erred in failing to suggest a remittitur.

The seventh and final contention alleges trial court error in failing to properly align the parties and to equalize the peremptory jury challenges.

Mrs. Hobrecht and her adult children in their separate appeal complain of the trial court's action in disregarding the jury's answer on the issue of loss of consortium following the death of decedent and in reducing the jury's verdict by $250,000.

We address Malone's contentions first although not in the order presented.

*$250,000 as damages for physical pain and mental anguish suffered by decedent for a thirty-day period.*

Malone's points four and five categorized above as its second contention urge that the jury answer to Special Issue No. 15 awarding the sum of $250,000 as damages for physical pain and mental anguish suffered by the decedent during a thirty-day period is unsupported by evidence, by insufficient evidence and alternatively that the finding is against the great weight and preponderance of the evidence as to be manifestly unjust.

■ In determining a "no evidence" point, which is a question of law, we consider only that evidence, if any, and the reasonable inferences therefrom, which viewed in its most favorable light, supports the jury finding and we reject all evidence and inferences which are contrary to the finding. *Garza v. Alviar*, 395 S.W.2d 821, 826 (Tex.1965).

■ In determining an "insufficient evidence" point which is a question of fact, we consider and weigh all the evidence in the case to determine whether the evidence is factually insufficient to support a finding of a vital fact or whether the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust that the finding should be set aside and a new trial ordered. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 662 (1951).

In response to Special Issue No. 15, the jury found that $250,000 would fairly and reasonably compensate the decedent for his conscious pain and mental anguish suffered before his death. The compensation covered a period of thirty-two days beginning on September 8, 1980, the date of the first insulin overdose, and running through October 10, 1980, the day the deceased

expired from what one witness described as "almost total organ failure."

From the date of the first overdose until his death, the decedent's condition worsened continuously. After being transferred to the Santa Rosa Medical Center from the Park North General Hospital, the decedent developed congestive heart failure, shortness of breath and water in his lungs. His appetite lapsed and his bladder lost its ability to void normally. He eventually developed acute tubular necrosis of the kidneys which eventually led to dialysis.

Although the blood sugar was restored to a level compatible with life, the injury caused by overdose of insulin damaged the kidneys to the point where they could no longer rid the body of toxic substances. This led to a buildup of digitalis and quinidine levels in the blood which resulted in increased strain and stress on an already compromised heart.

Malone advances the untenable notion that the decedent suffered no physical pain and experienced no mental anguish during this period of rapid health deterioration because there is no evidence that he ever told anyone that he was experiencing pain or that he recognized his impending death.

Malone's own recitation of the facts descriptive of decedent's last thirty days of life can lead to but the undeniable conclusion that the decedent was suffering horribly from the insulin insult and that he remained in such a state of alertness as to fully appreciate the drain his illness was placing upon his organs and body as a whole.

We recite a chronology of the symptoms attributed to decedent as recognized by Malone. Following the initial overdose, decedent became tired, confused and had difficulty moving. His appetite then disappeared and he began to make gasping noises. He broke out in a sweat and his eyes began bugging out. These symptoms were repeated for an additional day. Decedent then experienced increased loss of appetite and shortness of breath. Confusion set in followed by disorientation, lethargy, sleepiness, slurred speech and loss of ability to speak.

■ We do not agree with Malone that the jury was unauthorized to find pain and suffering including mental anguish from the record before it. It is well established that conscious pain and suffering may be inferred from circumstantial evidence. *Green v. Hale,* 590 S.W.2d 231 (Tex.Civ. App.—Tyler 1979, no writ).

■ Malone would urge upon this court that a recovery may not be had unless the decedent knew and expressed to someone his knowledge of impending death. Such is not the law. Consciousness of approaching death is a proper element to be considered in evaluating mental suffering. *Jenkins v. Hennigan,* 298 S.W.2d 905, 911 (Tex.Civ. App.—Beaumont 1957, writ ref'd n.r.e.). It is not the sole element to be considered.

■ In 17 TEX.JUR.2d 312, *Damages* § 252, it is said:

It is not necessary that the existence of physical or mental suffering be proved by direct evidence; such suffering may be presumed in cases where it is the natural consequences of the injury of which the plaintiff complains. Where serious bodily injury has been inflicted, some degree of physical and mental suffering is the necessary result; and in such cases the jury are [*sic*] authorized, without the direct proof of such suffering, to consider the pain both of body and of mind in assessing the amount of damages.

Under all the facts adduced the jury was authorized to draw a reasonable inference of the pain and mental anguish experienced by decedent during the last month of his life. It became the duty of the jury, as a matter of discretion under a proper instruction by the court, to weigh the pain and anguish it found and to convert it into a monetary award.

■ When we consider only that evidence that supports the award and the reasonable inferences to be drawn therefrom, rejecting all evidence and inferences to the contrary, we must conclude that

there is evidence of probative force which supports the jury's answer to Special Issue No. 15. *Garza v. Alviar, supra.*

Upon consideration of the entire record we conclude that the jury's answer to the special issue is supported by factually sufficient evidence and that the answer was not against the great weight and preponderance of the evidence. *In re King's Estate, supra.* Points four and five are overruled.

*$250,000 as damages suffered by Mrs. Hobrecht as pecuniary loss.*

Malone's points of error six and seven categorized as its third contention urge that the jury answer to Special Issue No. 13(a) awarding the sum of $250,000 for pecuniary loss to Mrs. Hobrecht is unsupported by evidence, by insufficient evidence and alternatively that the finding is against the great weight and preponderance of the evidence as to be manifestly unjust. Once again we adhere to the standard of review applicable to legal insufficiency challenges, *Garza v. Alviar, supra,* and factual insufficiency challenges, *In re King's Estate, supra.*

The instructions to the jury on the items of damage that might be considered in arriving at Mrs. Hobrecht's pecuniary loss included the following:

> You shall take into account the following elements of damages, and none other, and you are instructed to consider each element of damage separately, so as not to include damages for one element in any other element.
>
> (a) Pecuniary loss resulting from the death of Roland Hobrecht, taking into account the care, maintenance, support, services, advice, counsel, and reasonable contributions of pecuniary value that Mrs. Roland Hobrecht would in reasonable probability have received from Roland Hobrecht during his lifetime had he lived.

No objection was lodged to the proposed instruction by Malone as to any of the elements permitted to be considered by the jury. On appeal Malone recognizes the propriety of such inclusion in the instruc-

tion by directing our attention to *Camco, Inc. v. Evans,* 377 S.W.2d 703 (Tex.Civ. App.—San Antonio 1963, writ ref'd n.r.e.) and *Texas Consolidated Transport Co. v. Eubanks,* 340 S.W.2d 830 (Tex.Civ.App.— Waco 1960, writ ref'd n.r.e.).

Malone further recognizes that the decedent, in the last five years prior to his death, had a taxable income which varied from $18,000 to $23,000 per year and had a life expectancy of between eight and ten years.

We understand the gist of Malone's complaint to be that the record should contain additional evidence of future earning capacity or of probable increase in earnings. The argument, however, ignores such items as care, maintenance, services, advice, counsel and other contributions having pecuniary value not related to earnings from employment.

The record shows that decedent and his surviving wife were very close, as was the entire Hobrecht family. Much time was spent by Mrs. Hobrecht with her husband enjoying regular bridge games and traveling to various race tracks in pursuit of their love of horses.

Decedent was the sole wage earner and as such the head of the household. Mrs. Hobrecht thus looked to him for counsel, services, advice and protection.

Prior to her husband's death, Mrs. Hobrecht was active and enjoyed life. Since the death of her husband she has exhibited the appearance of being lost and disoriented. She now seems lonely and depends upon her children for the security once provided by her husband.

In cases where recovery of unliquidated damages as pecuniary loss is sought on behalf of a surviving spouse, the law rarely, if ever, furnishes a precise legal measure of recovery. Thus, the amount to be awarded rests primarily within the discretion of the jury, and unless the award is so large as to indicate that it was the result of passion, prejudice, partiality, or corruption, or that the evidence had been disregarded, the verdict of the jury is conclusive

and will not be set aside as excessive, either by the trial court or on appeal. *Camco, Inc. v. Evans, supra.*

■ Oftentimes it is extremely difficult to determine the pecuniary value of a spouse aside from the actual monetary contributions made to the marriage. The law hence vests the jury with considerable discretion and latitude in drawing upon their own knowledge, experience and sense of justice guided by proper instructions of the court. Under the evidence adduced it is not unrealistic to conclude that the decedent would have contributed from employment alone in the vicinity of $200,000 had he lived ten additional years. We are not prepared to hold that his care, maintenance, services, advice, counsel and other contributions having pecuniary value to the marriage would not have been valued at $50,000 for an additional ten years.

■ When we consider only the evidence supporting the award and the reasonable inferences to be drawn therefrom, rejecting all evidence and inferences to the contrary, we can only conclude that there is evidence of probative force supporting the jury's answer to Special Issue No. 13(a). A review of the entire record convinces us that the jury's answer is supported by factually sufficient evidence and that their answer was not against the great weight and preponderance of the evidence. Points six and seven are overruled.

*Pecuniary loss of the Hobrecht children.*

In points of error eight through thirteen categorized as contention number four Malone alleges that there is no evidence or that the evidence is insufficient to support the jury's finding in response to Special Issue No. 14 which inquired into the pecuniary loss suffered by the adult children of the decedent. Malone further urges that the jury's answer to Special Issue No. 14 was so against the great weight and over-

whelming preponderance of the evidence as to be manifestly unjust.

The Hobrecht's third amended original petition sought to recover on behalf of the adult children for loss of pecuniary support, companionship, society, affection and comfort. The special issue submitted was, however, not quite that inclusive.

The trial court submitted Special Issue No. 14 almost identically as requested by the Hobrechts.[1] The issue reads:

What sum of money, if any, if paid, now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate John Hobrecht, Richard Barry Hobrecht, and Pamela Goodlet for the pecuniary loss; if any, resulting from the occurrence in question?

In answering this issue, you may consider the following elements, if any, and none other:

Loss of care, maintenance, support, services, education, advice, counsel, and contributions of a pecuniary value that they would in reasonable probability have received from their father, Roland Hobrecht, during his lifetime had he lived. . . .

Malone lodged the following objection to the submission of Special Issue No. 14:

Further, we object to Special Issue No. 14 seeking pecuniary damages on behalf of Richard Barry Hobrecht, that particular line seeking damages for Richard Barry Hobrecht. There is no evidence of any pecuniary loss on behalf of Richard Barry Hobrecht, and as such, there is no basis for which to submit that issue to the jury.

During final summations counsel for Malone argued:

. . . as to the damages of the children the pecuniary loss, if you please, of the children, the factors which in my judgment bear on it—and I'm not going to tell you what figures to put, I am not even going to suggest a figure to you—but certainly

1. The requested special issue as submitted tracks the suggested form found in § 12.02, TEXAS PATTERN JURY CHARGES. *See also*

*Samford v. Duff,* 483 S.W.2d 517 (Tex.Civ.App. —Corpus Christi 1972, writ ref'd n.r.e.).

Mr. Barry Hobrecht, who has a catering business in Dallas, the loss of his father to him is tragic because he was a very good friend. There was no pecuniary loss to Barry, there is no testimony as to any pecuniary loss to Barry, none whatever, absolutely nothing. As to John, possibly. John, you remember, testified that his father did from time to time lend him money which he paid back. That's a loss. There is some pecuniary loss involved in not being able to have a father from whom you can borrow money when you need it even though you pay it back.

Pamela's situation is quite different. You heard the testimony that her father helped her when the medical requirements of her child caused her to need money that she didn't have. I have no doubt that so far as Mr. Hobrecht was able to continue that, that he would have.

On appeal, Malone reurges his announced trial position regarding Barry Hobrecht's right to recover for pecuniary loss in the absence of some showing that he received financial assistance or expected to receive financial contributions from his father had he lived.

The Hobrechts respond that under the court's instruction the jury was not restricted to a finding of financial contribution but could consider care, services, education and counsel.

▮ While we must agree with the Hobrechts that the instruction was not as narrowly limited as Malone now claims, still we are constrained to agree with Malone that the meager evidence adduced regarding Barry Hobrecht's pecuniary loss is not supportive of the jury finding in Special Issue No. 14. We agree that the finding is against the great weight and preponderance of the evidence as to be manifestly unjust as it applies to Barry Hobrecht.

The Hobrechts recite the evidence in their brief which they consider supportive of the jury finding. We quote it in its entirety.

Barry Hobrecht enjoyed an excellent relationship with his father. Barry was also in the advertising business and attributed whatever success he had had in that business to his father. Barry considered his father one of the finest people he had ever known.

To the foregoing we can add little more. Even with the additional elements the jury was permitted to consider we are unable to find support for the jury award of $30,000. We sustain Malone's contention that the jury finding is not supported by the evidence but is in fact contrary to it.

We are, however, in agreement with Malone's trial assessment of the evidence supporting the jury finding as it applies to the other adult children of the decedent, John Hobrecht and Pamela Goodlett.

John Hobrecht, the youngest child of the decedent, is married, lives in a San Antonio suburb, and is independently employed as a painting contractor. John was very close to his father and often relied upon his advice and counseling in matters that affected his family and work. John could always depend on his father for assistance during a financial pinch and often obtained loans from him or counseling on how to resolve a pending monetary crisis.

Pamela Goodlett, thirty-three years of age at the time of trial, is married and has three children, the youngest of which is multi-handicapped and requires frequent hospitalization. Pamela depended heavily on her father for financial assistance in coping with medical expenses and in coping with the problems encountered in rearing a handicapped child.

Malone argues that John and Pamela are not entitled to recover for pecuniary loss inasmuch as neither produced evidence of amounts actually received by each from their father or amounts expected to be received from him had he lived. Reliance is placed upon *Carlisle v. Duncan*, 461 S.W.2d 254 (Tex.Civ.App.—Dallas 1970, no writ) and *South Texas Coaches v. Eastland*, 101 S.W.2d 878 (Tex.Civ.App.—Dallas 1937, writ dism'd).

We find neither case persuasive. In *South Texas Coaches*, there was no evidence in the record that the adult child of

the deceased had ever received anything of value from her father or a reasonable probability that he would have contributed anything of value to her had he lived. *See also Missouri, K & T Railway Co. of Texas v. James,* 55 Tex.Civ.App. 588, 120 S.W. 269 (1909).

In *Carlisle,* the opinion is silent on the evidence, if any, that was developed showing entitlement or non-entitlement to pecuniary loss based upon a history of support. The opinion turns on the trial court's failure to correctly instruct the jury on element of damages to be considered. *Carlisle* is not in anywise instructive upon the issue before us.

■ It has long been recognized that adult children may recover damages for the wrongful death of parents, and in arriving at such damages the loss of prospective contribution from the deceased parent may be taken into consideration. *San Antonio & A.P. Railway Co. v. Long,* 87 Tex. 148, 27 S.W. 113 (1894), *overruled on other grounds, Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983); *Texas & P. Railway Co. v. Martin,* 60 S.W. 803, 25 Tex. Civ.App. 204 (1901, no writ); *I.G.N. Railway Co. v. Acker,* 128 S.W.2d 506 (Tex.Civ. App.—Eastland 1939, err. dism'd judgm. cor.); *Houston Gas & Fuel Co. v. Perry,* 127 Tex. 102, 91 S.W.2d 1052 (1936); *Texas Consolidated Transportation Co. v. Eubanks,* 340 S.W.2d 830 (Tex.Civ.App.— Waco 1960, writ ref'd n.r.e.); *Hartzell Propeller Co. v. Alexander,* 485 S.W.2d 943 (Tex.Civ.App.—Waco 1972, writ ref'd n.r. e.).

Malone's contentions address the question of the existence of evidence and its sufficiency to support an award for pecuniary loss and not the matter of excessiveness of the award. We, therefore, express no opinion on the amount of the award as to excessiveness inasmuch as that issue is not before us.

■ Our concern must focus on whether the jury verdict is supported by evidence. We find that as to John Hobrecht and Pamela Goodlett it is sufficient and that the jury finding is not against the great weight and preponderance of the evidence as to be manifestly unjust. *Cf. International-Great Northern Railway Co. v. Acker, supra.* Malone's summations to the jury conceded the existence of evidence to support some award and extolled the jury to supply the figure as they best could from the evidence. The matter was thus left to the jury's sound judgment and sense of justice. *Galveston, H & S.A. Railway Co. v. Puente,* 70 S.W. 362, 30 Tex.Civ.App. 246 (1902, writ ref'd); *Samford v. Duff,* 483 S.W.2d 517 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.).

*The award for loss of consortium suffered prior to the death of the deceased.*

Malone's points fourteen and fifteen categorized as the fifth contention argue that the jury's answer to Special Issue No. 13(b) awarding the sum of $25,000 as damages for loss of consortium for the period prior to the death of the deceased is unsupported by evidence, by insufficient evidence and alternatively, that the finding is against the great weight and preponderance of the evidence as to be manifestly unjust. The argument advanced, however, addresses the question of excessiveness and we, therefore, treat the contention as one of excessiveness.

The only argument advanced by Malone in support of its points is that the award of $25,000 for a period slightly over one month translates into an award of $800 plus per day. The award is therefore characterized as immense and enormous. The Hobrechts admit that the amount is generous. We agree.

■ The court's instruction to the jury tracks the definition of consortium found in *Whittlesey v. Miller,* 572 S.W.2d 665 (Tex. 1978). The jury was, therefore, permitted to consider affection, solace, comfort, companionship, society, assistance and sexual relations necessary to a successful marriage as items constituting consortium. The record in support of the jury answer does not contain an abundance of evidence

in support of each of the items the jury was permitted to consider.

The evidence, however, is uncontradicted that the Hobrechts were a very close family. The presence of each of the items collectively constituting consortium may readily be inferred from the testimony of the numerous witnesses. It is not to be doubted that Mrs. Hobrecht's loss is a real one requiring some compensation.

■ The loss of consortium and its constituent elements necessarily involve subjective states incapable of precise translation into monetary amount. The duty of resolving the monetary value to be placed on the loss falls upon the jury and its impartial conscience and judgment acting reasonably, intelligently and in harmony with the evidence. *Whittlesey v. Miller, supra,* at 667. While we conclude that there is evidence of probative force sufficient to entitle Mrs. Hobrecht to recover for loss of consortium suffered prior to the death of her husband and that the jury's finding of such a right to recovery is in keeping with its reasonable and intelligent exercise of guided discretion, we do not agree that the amount awarded is in keeping or in harmony with the evidence. We sustain Malone's contention that the amount awarded is excessive.

■ Although we find that the amount awarded is not in keeping or in harmony with the evidence, we find no showing that passion, prejudice or some other improper motivation controlled the jury's award of damages in response to the loss of consortium special issue. Under the circumstances, this court may order a remittitur without the need for a reversal and remand of the case. *World Oil Co. v. Hicks,* 129 Tex. 297, 103 S.W.2d 962 (Tex.Comm'n App. 1937, opinion adopted).

■ The fact that the award is excessive is not an affirmative showing that the jury was motivated by passion, prejudice or some other improper motive unless the verdict is shocking to the judicial conscience. *World Oil Co. v. Hicks, supra.*

■ We hold that the amount of the verdict on loss of consortium prior to death and the judgment based thereon are excessive. Our finding of excessiveness does not, however, compel a finding that the amount awarded was motivated by passion and prejudice or an improper motive. In arriving at our decision, we have painstakingly examined the entire record bearing on the issue of damages. In our exercise of our judicial judgment and discretion, we find that the amount of $2,500 would be a fair and reasonable compensation to be awarded for loss of consortium for the period from September 8, 1980 to October 10, 1980. We sustain Malone's points of error urging excessiveness of the award for loss of consortium prior to death.

*Alignment of Parties and Peremptory Challenges.*

Points of error seventeen and eighteen categorized as contention number seven complain of the trial court's failure to align the parties and in failing to award Malone more peremptory challenges.

Prior to the selection of the jury, Malone filed its motion to equalize strikes. After a hearing the trial court awarded Malone eight peremptory challenges and awarded the Hobrechts and the third party defendant, Dr. Pomerantz, six peremptory challenges each.

It is the position of Malone that the Hobrechts and the third party defendant should have been treated as a "single party" and the strikes then equalized between the Hobrechts and the third party defendant as a "single party" against Malone as a single party.

■ In *Patterson Dental Co. v. Dunn,* 592 S.W.2d 914 (Tex.1979), the court spelled out the procedure to be followed by a trial court in allocating jury strikes. Initially, the trial court is required to decide whether there is antagonism between multiple parties on the same side of the lawsuit with respect to a material issue to be decided by the jury. After alignment of the parties, the court must then equalize the strikes in accordance with the ends of jus-

tice so that neither side will receive an unfair advantage. Equalization of strikes is committed to the sound discretion of the trial judge. Although the trial court found antagonism between the Hobrechts and the third party defendant, Malone argues that there could be no antagonism because there was, in fact, an unwritten agreement between the Hobrecht family and Dr. Pomerantz.

There has been no evidence adduced in the record indicating the existence of such an agreement and Malone concedes that in the absence of such an agreement there was antagonism.

Reliance is placed upon *Greiner v. Zinker*, 573 S.W.2d 884 (Tex.Civ.App.—Beaumont 1978, no writ) and *City of Houston v. Sam P. Wallace & Co.*, 585 S.W.2d 669 (Tex.1979). Both of these cases involve defendants in a multi-party lawsuit wherein a defendant or defendants settled with the plaintiff prior to trial. In both of these cases the settling defendants were given their own set of strikes before the trial court was advised of the settlement. Neither case is deemed controlling.

■ We find the facts in *City of Amarillo v. Reid*, 510 S.W.2d 624 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.) to be more analogous to the facts in the instant case. There the very pleadings of the defendant supplied the antagonism by alleging that the third party defendant was solely responsible for the plaintiffs' damages. The pleadings of Malone placed Dr. Pomerantz in the same position as the third party defendant in *City of Amarillo v. Reid, supra.* We conclude that the trial court did not err in refusing to realign the parties other than as designated by the pleadings. We must next determine whether the trial court abused its discretion in the manner of equalizing the strikes between the parties.

■ The manner of allocation was well within the guidelines discussed in *Patterson Dental Co. v. Dunn, supra,* wherein the court stated:

Although article 2151a was intended to add an element of flexibility in awarding strikes among multiple parties and the trial court has discretionary power in determining the number of strikes awarded, in most cases a two-to-one ratio between sides would approach the maximum disparity allowable. In cases in which the disparity between strikes allowed the two sides did not exceed a two-to-one ratio, courts have held that there was no abuse of discretion.

The trial court's allocation of strikes among the parties created a one and one-half to one ratio between the sides. We find no abuse of discretion in the manner in which the trial court equalized the strikes.

■ In examining the entire record, we are hard pressed to find how the trial court's allocation of strikes could have produced an unfair trial. Liability was practically conceded by Malone during final summations and the only issues presenting serious conflict were the damage issues. The appeal before us bears this out. Only issues addressing the jury awards are before us.

Indeed, during final summations Malone's counsel admitted that the case was a defenseless one. Much of the argument thereafter was addressed at reducing the recovery on the various issues submitted to the jury.

An examination of the entire record does not disclose an unfair trial. *Retail Credit Co. v. Hyman*, 316 S.W.2d 769 (Tex.Civ.App.—Houston 1968, writ ref'd). Points of error seventeen and eighteen are overruled.

### Remittitur

Malone's point of error sixteen categorized as contention number six complains of the total amount awarded by the jury to the Hobrechts and contends that the trial court erred in failing to suggest a remittitur. The record indicates that Malone filed a motion entitled, "Motion to Disregard Jury Finding and Motion to Enter Judgment" in which it prayed that the trial court order remittitur in the amount of

$600,000. The motion contains an unsigned fiat seeking to set the matter for determination on November 9, 1982. There is no indication in the record that a hearing was ever held on the motion on that date. The final judgment entered on November 12, 1982, however, addresses Malone's motion and refuses to order remittitur. There is no statement of facts before us containing evidence adduced in support of the motion seeking remittitur. We are, thus, left to speculate as to the matters raised before the trial court in support of such relief.

■ A remittitur of damages should not be suggested unless the verdict is shown to be the product of passion, prejudice or other improper motives or the amount fixed was not the result of a deliberate and conscientious conviction in the minds of the jury, or it shocks the conscience of the court. *Lee v. Andrews*, 545 S.W.2d 238, 248 (Tex.Civ.App.—Amarillo 1976, err. dism'd).

■ The powers of a trial court and a court of appeals to determine the propriety of remittitur are governed by the same standard. *Highlands Insurance Co. v. Baugh*, 605 S.W.2d 314, 319 (Tex.Civ.App. —Eastland 1980, no writ).

Malone has made some effort in its brief before this court to demonstrate that the verdict was the product of passion, prejudice, or some other motive, that the amount fixed was not the result of a deliberate and conscientious conviction in the minds of the jury and that it shocks the conscience of the court. Although we have not agreed with Malone that the verdict reflects any of the foregoing defects we, nevertheless, order remittitur in the instance wherein it appears appropriate to us.

■ In the absence of a record indicating the measures taken by Malone to invoke the trial court's discretion to order remittitur, we are in no position to hold that the trial court abused its discretion to order remittitur. Plainly and simply we can only conclude that the motion of Malone was permitted to speak for itself. A review of the motion does not indicate that the trial court was in error in overruling it absent some showing that the verdict was in fact tainted. We overrule Malone's point of error sixteen insofar as it complains of the trial court's refusal to order remittitur. To the extent that the point complains of the total amount awarded, Malone will receive the benefit of remittitur to be suggested by this court.

### Limitation of recovery.

Points of error one through three categorized as the first contention complain of the trial court's refusal to limit the judgment to $500,000 plus reasonable medical expenses and costs of court.

The jury's verdict was received on October 29, 1982. Thereafter on November 1, 1982, the Hobrechts filed their *Motion for Judgment on the Verdict* seeking to have the trial court enter judgment for the sum of $917,921.49 with interest thereon at the legal rate from date of judgment and for costs.

On November 8, 1982, Malone filed its *Motion to Disregard Jury Finding and Motion to Enter Judgment* seeking to have the trial court disregard the jury award of $250,000 for loss of consortium after the date of death of the decedent arguing that loss of consortium is allowed only in injury cases and not as an element of a wrongful death cause of action. The motion then prayed for entry of judgment for the sum of $667,921.49 or alternatively for a limitation on recovery for the sum of $500,000, invoking article 4590i.

The trial court opted to disregard the $250,000 consortium award in response to Malone's alternative prayer. Thereafter the Hobrechts sought to have the trial court restore the eliminated award of $250,-000 for loss of consortium and Malone sought to further limit the amount of recovery to $500,000 by again invoking the provisions of TEX.REV.CIV.STAT.ANN. art. 4590i.

On appeal Malone devotes a considerable portion of its brief to argument addressing the constitutionality of article 4590i. The

balance of the argument, considerable as well, is devoted to the applicability of article 4590i to pharmacies as a health care provider.

Nothing in the pretrial or trial pleadings of any of the parties, except the third party defendant,[2] purports to invoke article 4590i. There is no indication that the lawsuit filed by the Hobrechts ever purported to be a "Health Care liability claim." Indeed Malone did not file special exceptions to the pleadings of the Hobrechts or insist that compliance be had with the prerequisite for the filing of a "Health Care liability claim." *See* art. 4590i, §§ 4.01, 5.01.

The suit was filed pursuant to TEX.REV. CIV.STAT.ANN. art. 5525, commonly known as the "Survival Statute" and pursuant to TEX.REV.CIV.STAT.ANN. art. 4671 et seq., the "Wrongful Death Statute."

Pre-trial preparation and trial strategy indicate that both parties considered the Hobrechts' claims to be nothing more than wrongful death and survivor's claims. The nature of a claim should not change after the matter has gone to the fact finder.

Nevertheless, we need not agree with the Hobrechts that a claim for limitation of damages is waived in the absence of some pleading affirmatively invoking the limitation as an avoidance or partial avoidance. Nor need we decide whether Malone falls within the category of a "Health Care provider" so as to be entitled to the favored status afforded by the Act.

■ We agree with the Supreme Court of North Dakota that "the limitation of recovery does not provide adequate compensation to patients with meritorious claims; on the contrary, it does just the opposite for the most seriously injured claimants. It does nothing toward the elimination of non-meritorious claims.

*Arneson v. Olson,* 270 N.W.2d 125 (N.D. 1978); *see also* Witherspoon, *Constitutionality of the Texas Statute Limiting Liability for Medical Malpractice,* 10 TEX. TECH.L.REV. 419 (1978).

We recognize that our brethren of the Court of Appeals at Beaumont have recently held that portions of section 11.02 of article 4590i, as they apply to hospitals, are unconstitutional. *See Baptist Hospital of Southeast Texas, Inc. v. Baber,* 672 S.W.2d 296 (Tex.App.—Beaumont 1984, writ pending). We extend that holding to a corporation operating a pharmacy even if it qualifies as a health care provider under section 1.03(a)(3) of the Act. We overrule appellant's points one through three.

*Loss of consortium after death.*

We now address the sole contention brought forth in the Hobrechts' separate appeal; that the trial court erred in disregarding a jury award of $250,000 for loss of consortium following the death of Roland Hobrecht. The trial court's action was predicated upon the argument advanced by Malone on appeal, that loss of consortium is not recoverable as an element of damages in a wrongful death action. Whether loss of consortium is an independent cause of action[3] or an element of damages[4] is immaterial to our holding.

■ Whatever the prevailing view may have been at one time, it is clear, since the decision in *Sanchez v. Schindler,* 651 S.W.2d 249 (Tex.1983), was handed down, that recovery under the wrongful death statute is no longer limited to pecuniary losses. We can imagine no injury to the marital relationship more total or permanent than the death of one of the marital partners caused by the negligence of a third party.

---

**2.** The third party defendant on the second date of trial filed his cross-action for declaratory judgment invoking the provisions of article 4590i and praying for a declaration that he was entitled to recover from Malone for the filing of a bad faith claim against him.

**3.** *Whittlesey v. Miller,* 572 S.W.2d 665, 667 (Tex. 1978).

**4.** Note, Judicial Treatment of the Negligent Invasion of Consortium, 61 COLUM.L.REV. 1341 n. 1 (1961).

Although recovery sought for loss of consortium is primarily for harm to intangibles or sentimental elements of the marital relationship, the losses are real, direct and personal. *Whittlesey v. Miller, supra.*

■ We agree with the courts in *Standford v. McClean Trucking Co.,* 506 F.Supp. 1252 (E.D.Tex.1981) and *Missouri Pacific Railroad Co. v. Dawson,* 662 S.W.2d 740 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) that the time has come for there to be recovery in Texas for damages for loss of consortium when death occurs as a result of the negligence of a third party. *See also Monsanto Co. v. Johnson,* 675 S.W.2d 305 (Tex.App.—Houston [1st Dist.] 1984, writ pending).

■ We uphold the Hobrechts' point of error and hold that the trial court erred in disregarding the jury award for loss of consortium following death. We reverse the judgment of the trial court and reinstate the award of $250,000 awarded for loss of consortium after the death of Roland Hobrecht.

Inasmuch as we have sustained Malone's challenge to the award of $30,000 made to Barry Hobrecht as pecuniary loss for the loss of his father as being without sufficient support in the evidence but contrary to it, and the award of $25,000 made to Mrs. Hobrecht for loss of consortium prior to the death of her husband as being excessive, and being of the opinion that the issue of liability was not in fact a contested one, we will reverse, sever and remand that portion of the controversy involving Barry Hobrecht's claim for pecuniary loss as a clearly separable claim from the other issues resolved and found to be without error. TEX.R.CIV.P. 434;[5] *Cochran v. American Savings & Loan Association of Houston,* 586 S.W.2d 849 (Tex.1979);

*Moore v. Moore,* 259 S.W. 322 (Tex.Civ. App.—Waco 1924, no writ).

■ Since we have determined that the award of $25,000 to Mrs. Hobrecht for loss of consortium prior to the death of her husband is excessive and that the sum of $2,500 would be reasonable for the elements of damage sustained, we are required to treat the balance as excess.

Therefore, having found no reversible error requiring remand other than the claim of Barry Hobrecht for pecuniary loss, which we sever as a separable claim and remand to the trial court for retrial, we will reform and affirm the trial court's judgment as modified by the reinstatement of $250,000 for loss of consortium after death and by reduction of the award for loss of consortium prior to death to $2,500 if appellee, Mrs. Hobrecht, files her written remittitur in the sum of $22,500 within fifteen days from the date of the delivery of this opinion; otherwise, that part of the judgment will be severed, reversed and the cause remanded for a new trial.

The judgment of the trial court is reversed and remanded in part as severed and reversed and remanded subject to an affirmance as reformed on condition of remittitur.

5. Rule 434 in part provides:

\* \* \* \* \* \*

Provided, first, that no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, ... and if it appears to the court that the error affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties, the judgment shall only be reversed and a new trial ordered as to that part affected by such error, provided that a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested....