CAMCO, INCORPORATED, Appellant,

v.

Mrs. Gladys Ebert EVANS et al., Appellees.

No. 14235.

Court of Civil Appeals of Texas.

San Antonio.

March 25, 1963.

Rehearing Denied April 22, 1964.

Kleberg, Mobley, Lockett & Weil, Corpus Christi, Markel Heath, Falfurrias, for appellant.

Lloyd, Lloyd, Dean & Ellzey, Alice, Fidencio G. Garza, Jr., Falfurrias, for appellees.

BARROW, Justice.

This is a wrongful death action brought by the surviving widow and two minor children of deceased, Seth Burns Evans, a general employee of Crews Wells Service, against Camco, Inc. Crews Wells Service is a drilling contractor and Camco is an oil field specialty service company. At the time of the accident in which Evans lost his life, both Crews and Camco were performing services for Humble Oil & Refining Company. After a jury trial, the court granted appellees' motion for judgment, and rendered judgment whereby appellees recovered damages from appellant in the total sum of $50,000.

Appellant has perfected this appeal and asserts: (1) that it is entitled to judgment on the jury finding that the deceased was a "special servant" of appellant at the time of the accident; (2) that the jury's findings of primary negligence were destroyed by other findings; (3) that the jury findings of primary negligence are in irreconcilable conflict with other findings; (4) the amounts of damages as found by the jury are manifestly unjust and so excessive as to show that the jury was influenced by passion and prejudice; (5) the court erred in overruling exceptions and objections to the duplicitous pleading and submission of the primary negligence issues; and (6) the court erred in overruling appellant's objections to the damage instructions.

Evans was killed in an accident which occurred on August 2, 1961, on an Humble lease in Brooks County. A well on this lease was full of water and three companies were employed by Humble to rework the well. Crews Wells Service had been on this location about two weeks before the accident with its rig, consisting of a substructure, rig floor, rotary, derrick and cathead (winch). On the afternoon of August 1, two Camco employees arrived on the location for the purpose of opening the sleeve on the well. After it was opened the Nitrogen Service Company forced nitrogen into the well in order to evacuate fluid from the casing and tubing. This was completed early in the morning of August 2, and then it was Camco's job to close the sleeve. The sleeve was opened several thousand feet below the surface and in order for Camco to open and close it, special equipment was required and furnished by Camco. A common oil field fitting known as a "unibolt" is attached to the christmas tree at the well's surface. One-half of this unibolt is con-

nected with the christmas tree and the other half is on whatever equipment is to be connected to the christmas tree. In performance of its work, Camco furnished a wireline valve or "blow-out preventer" which was connected to the unibolt. The special tools used for opening and closing the sleeve are lowered into the well in a 16′ tube known as a "lubricator."

On this occasion, after it was determined by Crews' toolpusher and Clovis Higginbotham, the wireline operator in charge for Camco on this location, that the sleeve had been properly closed, Camco was required to rig down its equipment and upon removal of Camco's equipment, Crews would take down its rig and leave the location. The testimony is undisputed that it is customary in oil field work for the rig crew to assist the specialty companies in rigging down their equipment. The accident occurred during this rigging down, while the wireline valve was being removed.

Camco furnished two men for its part of the work—Higginbotham and his helper, Bancroft. Crews had four men on this location when the accident occurred—Orea Lee Belk, driller; Lee Craig, chainhand; Jessie Rakowitz and the deceased, S. B. Evans, floormen. The rig crew were not engaged in any particular work of their own at the time and were assisting Camco in rigging down its equipment. Belk was operating the cathead, Rakowitz and Evans were on the rig floor, and Craig was on the ground near the christmas tree. The lubricator had been hanging in the rig until after the tests were completed and it was then lowered to the ground by use of the catline on the cathead. The tools were removed and Higginbotham was placing them in the Camco truck.

Bancroft and Craig were working to loosen the wireline valve from the unibolt connection. The catline was lowered by Belk through the hole in the rig floor to the wireline valve so that the valve could be hoisted after it was freed from the unibolt on the christmas tree. Evans and Rakowitz were waiting to guide the valve through the opening and then over the side of the rig floor. In accordance with customary practice, Bancroft struck the unibolt with a hammer to loosen the connection. Unfortunately, the master valve on the christmas tree had not been closed, and about 3,000 pounds of pressure per square inch was against the unibolt and it exploded when struck. Evans was instantly killed; Bancroft, Craig and Radowitz were injured.

The jury found that Camco's employees were negligent in three aspects, and each was a proximate cause of Evans' death.[1] The jury found, however, in response to

1. The jury returned a verdict substantially as follows:

1. Bancroft's act of striking and loosening the coupling of the wireline valve at a time when gas from the well was exerting high pressure on and against the said valve was negligence.

2. This negligence was a proximate cause of Evans' death.

3. The failure of Camco employees to observe the pressure gauge on the wireline valve before striking and loosening the coupling on the wireline valve was negligence.

4. Such negligence was a proximate cause of Evans' death.

5. The failure of the Camco employees to turn off the master valve on the well before removal of the wireline valve was negligence.

6. Such negligence was a proximate cause of Evans' death.

7. Bancroft did not fail to keep a proper lookout for the safety of Evans before starting and attempting to remove the blow-out preventor.

8. Conditionally submitted, and therefore not answered.

9. Bancroft did not fail to give a proper warning to Evans before starting and attempting to remove the blow-out preventor.

10. Conditionally submitted, and therefore not answered.

11. In the work being done at the time of and immediately before the accident made the basis of this suit the Camco operator, Higginbotham, and his helper, Bancroft, had the right to control what Mr. S. B. Evans was doing and would do and how it was to be done.

12. Immediately before the accident, Lee Craig began loosening the unibolt on the wireline valve without the knowl-

Issue No. 11, that "in the work being done at the time of and immediately before the accident * * * the Camco operator, Higginbotham, and his helper, Bancroft, had the right to control what Mr. S. B. Evans was doing and would do and how it was to be done." It was stipulated that Camco carried workmen's compensation insurance, and therefore Camco urges that Evans was its special employee at the time of the accident and cannot recover in this common law action. Appellees urged in their motion for judgment, or in the alternative for judgment non obstante veredicto, that there were no pleadings or evidence to support this defense.

■ It is our opinion that the pleadings of Camco do not raise the defense of "special servant," and that the trial court improperly overruled appellees' objection to the submission of this issue. Camco alleged that it was hired to perform services in opening and closing a sleeve far below the surface of the ground and that this service had been completed properly; that the accident occurred during the removal of Camco equipment, which was an undertaking participated in by Camco employees and members of Crews' rig crew.

Camco further alleged that: "According to the usage and custom prevailing, these members of the rig crew, including Evans, since they were not otherwise occupied, helped and assisted in the disassembling and packing of the Camco equipment, and in such work the members of the rig crew technically were subject to the direction and control of the Camco employee, as to what should be done, and when and as to the manner in which it would be done. In practice, the rig crew knew what should be done and how to do it and accordingly proceeded without specific direction, or actual supervision and control by the Camco operator or his helper." It then alleged that Craig, without specific or actual direction, control or supervision by Camco's employees, began to remove the wireline valve without closing the master valve, and that his failure to close the master valve was the sole proximate cause of the accident.

Camco alleged that Evans had assisted and was to assist in lowering the Crews' catline through the opening in the rig floor and raising the wireline valve. "This was part of the operation that while it was technically subject to the direction, control and supervision of Higginbotham and/or Bancroft, was not actually directed, supervised and controlled since this was an operation with which a qualified oil field employee, such as Evans, was familiar and as to which he needed no specific, actual supervision, direction or control." It was then alleged that Evans was contributorily negligent in not ascertaining that the master valve was closed.

There was no allegation that Camco carried workmen's compensation, although there was a general allegation that Camco was not liable to appellees for the death of Evans and the sole and only remedy of appellees was under workmen's compensation laws of Texas.

It is seen that, although Camco alleged that Evans and his co-crew member, Craig,

edge of, and with no instructions in regard thereto from Bancroft.

13. Immediately before the time Craig began to loosen the unibolt on the wireline valve, Bancroft was in a position and engaged in activities so that he could not see whether Craig closed the master valve before beginning to loosen the said unibolt.

14. Bancroft was not negligent in assuming that Craig had closed the master valve before beginning to loosen the unibolt on the wireline valve.

15. Craig's act in beginning to loosen the unibolt on the wireline valve without closing the master valve was not the sole proximate cause of the accident.

16. Mrs. Evans suffered a pecuniary loss of $22,400 by the death of her husband.

17. James Evans suffered a pecuniary loss of $9,600 by the death of his father.

18. Edgar Evans suffered a pecuniary loss of $18,000 by the death of his father.

might technically be its special servants in such a situation, it alleged that on this specific occasion they were not. The defenses of sole proximate cause and contributory negligence asserted by appellant are inconsistent with the theory of "special servant" and appellant's point that appellees must seek relief from Camco's workmen's compensation carrier. Art. 8306, § 1, Vernon's Ann.Civ.Stats.

■■ There is no contention and it cannot be said, that this issue was tried by implied consent, as appellees timely objected to the submission of this issue on the ground that there were no pleadings. Harkey v. Texas Employers Ins. Ass'n, 146 Tex. 504, 208 S.W.2d 919. Appellant did not file a trial amendment. The trial court therefore erred in submitting this issue over appellees' objection.

■ Appellant urges, however, that even if the pleading did not support the issue of "special servant," the court could not disregard the jury finding and enter judgment in favor of appellees. It is true that under the provisions of Rule 301, Texas Rules of Civil Procedure, a trial court is authorized to render judgment non obstante veredicto only when there is no evidence warranting a submission of the issue to the jury. Sanders v. Harder, 148 Tex. 593, 227 S.W.2d 206; Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224. However, this rule has no application here. Since the issue of "special servant" was not pleaded or tried by implied consent, the finding of the jury was immaterial and could be disregarded without resort to a judgment non obstante veredicto. McDonald, Texas Civil Practice, § 17.31.

In Sproles v. Rosen, 126 Tex. 151, 84 S.W.2d 1001, the Court said: "The issue in question having no such support in the pleadings as to warrant its submission, the trial court did not err in disregarding the general finding made in response thereto." See also, Robichaux v. Bordages, Tex.Civ. App., 48 S.W.2d 698, writ ref.; Hodges v. Nix, Tex.Civ.App., 225 S.W.2d 576; 41–B, Tex.Jur., § 591. The trial court therefore properly disregarded the finding of the jury in response to Issue No. 11.

■ Appellant asserts in its second and third points that the primary findings of negligence as found in response to the first six issues are controlled by the jury findings to Issues 7, 9 and 14, or, in any event, are so conflicting that the judgment cannot stand. It is well settled that it is our duty to harmonize jury findings when possible. Producers Chemical Company v. McKay, Tex., 366 S.W.2d 220; Traywick v. Goodrich, Tex., 364 S.W.2d 190.

Issues 7 and 9 inquire as to whether Bancroft kept a proper lookout and gave proper warning to Evans that he was going to remove the wireline valve. It is seen that these issues inquire about different duties than are inquired about in Issues 1, 3 and 5. There is no conflict between the answers to these issues, and the findings favorable to appellant on Issues 7 and 9 do not destroy the unrelated adverse findings.

By their answer to Issue No. 14, the jury found that Bancroft was not negligent in assuming that Craig had closed the master valve before beginning to loosen the unibolt. This was based on evidence that a qualified oil-field worker should know that the high pressure must be kept from the unibolt before loosening the connection. The jury found, however, that Craig's act in beginning to loosen the unibolt without closing the master valve was not the sole proximate cause of the accident. In answer to Issue No. 1, the jury found that Bancroft's act in striking this coupling on the wireline valve while the gas was exerting high pressure against it was negligence. These findings can be harmonized in that the jury could believe that since Bancroft knew of the great danger and was in direct charge of the uncoupling he should have made certain that all the gas pressure had been removed before striking the coupling. There was evidence that the pressure must be bled off after the master valve is closed.

In any event, all three of the primary negligence findings must be destroyed before there is an irreconcilable conflict under the rule laid down in Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W. 2d 985. See also, Bay Petroleum Corp. v. Crumpler, Tex., 372 S.W.2d 318.

There was evidence that the pressure gauge which showed the amount of pressure against the wireline valve was directly in front of Bancroft when he struck the valve with the hammer. In Issue No. 3, the jury found that his admitted failure to observe the gauge was negligence. This finding does not conflict with that in response to Issue No. 14.

■ A fair construction of the jury finding to Issue No. 5 is that the Camco employees who were in charge of the removal of the wireline valve from the unibolt were negligent in not turning off the master valve before the removal operations were started. This finding is thereby harmonized with that to Issue No. 14. Appellant's second and third points are without merit and are overruled.

Three damage issues were submitted to the jury and appellant asserts that the finding on each issue is so contrary to the undisputed evidence as to be manifestly unjust and to show that the jury was influenced by passion and prejudice. At the time of his death, Evans was almost sixty years of age, but was in good health. The jury found that Mrs. Evans, who was forty-eight years old at the time of his death, suffered a pecuniary loss of $22,400. James Evans, who was seventeen years old at the time, recovered $9,600, and his brother, Edgar, who was twelve years old, recovered $18,000.

Evans was strong and vigorous and had performed heavy work in oil fields most of his adult life. He married Mrs. Gladys Evans in 1937, and they had three sons, one of whom died in infancy. He was very industrious, but for several years before the accident, the oil drilling business was in a recession and Evans was unable to secure much work. He was qualified as a driller, but during the oil recession he worked almost exclusively at the lower-paying job of roughneck. Although he diligently searched for work, he secured very little and earned only an average of about $1,000 annually during the five years preceding his death.

The record shows that Evans was a very good and attentive family man. His wife was forced to teach school during these lean years, and, when Evans was not working, he continually kept busy helping her with household tasks. He was very close to his sons and gave them much moral and citizenship training and guidance. He was very much interested in their future and exerted a strong influence towards their desire for higher education. He helped the boys with their homework, taught them how to perform chores, and tried to impress them with the value of hard work. In addition to helping his wife with chores, he counselled and advised her. The sons were in good health and Mrs. Evans suffered only from nervous tension brought on by the deaths of her husband and her mother, within a period of two months. It is seen that the sons were at ages when they should be leaning more on their father for advice and guidance than on their mother.

Appellant makes no complaint of the instructions to the jury as to the items of damage that might be considered. They were instructed, in the case of Mrs. Evans, that "pecuniary benefits" meant not only money, but anything that could be valued in money, including the reasonable pecuniary value of the counsel, protection, advice, services, care and attention that she would in reasonable probability have received from her husband. Insofar as the two sons were concerned, the jury was instructed that "pecuniary benefits" meant not only money, but included the pecuniary loss of the nurture, education, advice, and moral guidance that each would in reasonable probability have received from his father. In each instance, the jury was instructed

not to consider any other element of damage and not to allow anything for consolation, or for grief, sorrow or anguish, or for the loss of society, affection or companionship of deceased.

■ The rule to be applied by this Court, as set forth by an unbroken line of decisions, is stated in 17 Tex.Jur.2d 408, as follows: "In an action to recover damages in which the law furnishes no precise legal measure for their recovery, and they are unliquidated, the amount to be awarded rests primarily within the discretion of the jury, and unless the award is so large as to indicate that it was the result of passion, prejudice, partiality, or corruption, or that the evidence had been disregarded, the verdict of the jury is conclusive and will not be set aside as excessive, either by the trial court or on appeal."

■ This rule has particular significance in a suit to recover damages for wrongful death. Great difficulty is encountered in determining the pecuniary value of a husband and father other than the amount of money actually contributed. Juries, from their own knowledge, experience and sense of justice must determine these factors under proper instructions from the court and uninfluenced by passion or prejudice. Louisiana & A. Ry. Co. v. Chapin, Tex. Civ.App., 225 S.W.2d 614, writ ref. Each case must be measured by its own facts and considerable discretion and latitude must necessarily be vested in the jury. Green v. Rudsenske, Tex.Civ.App., 320 S.W.2d 228.

There is nothing pointed out by appellant, other than the size of the verdict, to indicate any improper motives on the part of the jury in finding any of these sums. It is seen that the verdict was well below appellees' prayer for damages in the total sum of $350,000. Appellant cites cases decided prior to 1930 in which verdicts smaller than appellees' were held excessive. It is well recognized that in the last decade the value of the dollar has decreased and verdicts in excess of those in this case have been approved. See Texas Consolidated Transportation Co. v. Eubanks, Tex.Civ.App., 340 S.W.2d 830; Union Transports, Inc. v. Braun, Tex.Civ. App., 318 S.W.2d 927; Texas & N. O. R. Co. v. Landrum, Tex.Civ.App., 264 S.W.2d 530; 17 Tex.Jur.2d 613, § 7.

■ Little would be gained by a review of other cases, as each must primarily stand on its own peculiar facts. It is our opinion, after a review of this entire record, that although the damages were very substantial under the limited earning record of deceased, we cannot say that any of them is so excessive as to require a remittitur or reversal.

■ Appellant asserts in its fifth point that the trial court erred in overruling its objection to the submission of Issues Nos. 1, 3 and 5, as all three issues are shades of the same ultimate act and therefore gave undue emphasis to it. Trial courts should not give several shades of the same issue. Texas & Pac. Ry. Co. v. Snider, 159 Tex. 380, 321 S.W.2d 280; Hodges, Special Issue Submission 133. Although we believe that appellees' negligence theory could have been fairly submitted to the jury in fewer issues, we cannot say, from this record, that reversible error was thereby committed. Rule 434, T.R.C.P.

The jury was instructed under each damage issue to consider no "element of damage" other than those therein specifically stated. This instruction was proper and necessary, as there was testimony of other items of damage which were not recoverable. It followed the definition of "pecuniary benefits" and served to prevent the jury from considering unauthorized items of damage. This instruction would not prevent the jury from considering factors favorable to appellant, such as the age, health and limited earnings of deceased compared to his living expenses. The trial court did not err in overruling appellant's objections to this instruction in each damage issue.

The judgment is affirmed.